Thank you. Good morning everybody. The cases calendared this morning are submitted on the brief except for the one to be argued, 0850010 United States v. Gonzalez-Zotelo. Mr. Kernow, are you on the phone? Yes, I am. Good morning to you, sir. Good morning. And, Mr. Lubitschek, I see you here in person, so we're ready to go. David Kernow, appearing for the United States. The government's position in this case can be summarized simply this way. The district court in this case... The volume turned up a little bit. Can you hear me better now? Better. Hello? Yes, we're good to go. Okay. And you can hear me alright? Alright. Okay. Summarizing the government's position, the district court in this case felt that this defendant could receive 57 months in custody. The district court didn't impose 57 months, but instead imposed a sentence of 30 months solely because the court in a previous case on that day, in another immigration case where there were different charges, had been forced to impose a 30-month sentence because of the implementation of the U.S. attorney's fast-track policy, a policy which this district court disagrees with profoundly. That act is not within the discretionary boundaries set out in the Supreme Court cases or this court's cases dealing with sentencing. Mr. Kernow, this is Silverman. I know that the judge knocked the criminal history down from a 4 to a 3. Yes. Suppose he had said, taking a look at the entire package, this child molester is more grossly overrepresented than the ordinary, so I'm going to knock it down from a 4 to a 1 or a 2. Could he have done that and basically achieved the same result? Could he have done it? Yes. I suppose it would be within his discretion, although that would be something obviously he'd probably appeal as well, to knock something down that far. But obviously adjusting the categories in that way can get you down to a lower sentence. That would obviate the argument that he's taking sentencing disparity, fast-track disparity, into account. Let me say this. There are other ways that the 30-month sentence could have been achieved. We will agree to that. There are other ways. In fact, the defense counsel in pleadings suggested another way to get to the 30-month sentence. The fact of the matter is that the court just obviously didn't care about those other reasons. The court wanted to talk about the fast-track policy and wanted to, for lack of a better term, punish the government for actually having this policy and implementing it in other cases. That's the whole thrust of our appeal is that the court simply used a method that is not permitted under the guidelines or under 3553. Does that answer the court's question? I guess we'll see. I'm not committing to anything, Mr. Kernhofer. Okay. All right. Well, again, if you're talking about the court's discretion, the cases, the later cases, have told us that while the courts have wide discretion, that it is not unfettered. It's not an unfettered discretion. And we see that discussed in the Gomez-Herrera case from the Fifth Circuit. And this court, in the Ruff case, tells us that you depart or you have to defer to the district court only if there is a reason and reasonable decision that the 3553 factors on a whole justified the sentence. And we do not believe that this was a reasoned and reasonable decision, considering the fact that the court's purpose here was solely to reduce the sentence because of the fast-track policy. This is not a disparity analysis. As the defense would have you construe this, the two categories of defendants are not similarly situated. Both have been convicted of immigration offenses, correct. But they're different offenses. One received a fast-tracked offer and the other one did not. And that was a matter of our policy. And the district court has no rightful say over whether we do that or we do not. The defendants, such as Gonzalez-Sotelo, did not perform any of the required acts or steps to take advantage of such an offer. And I would also say that the disparity, if you do go on a disparity analysis, is one which is not unwarranted. And that has been reflected in this court's cases, in Marcial-Santiago-Panuelos-Rodriguez, and more particularly in the Gomez-Herrera case. They all go off on the same idea that this is a disparity which is provided for in the statute, and it is not one which is unwarranted. The defense raises the Kimbrough case. And we have argued in our reply brief that Kimbrough is simply not our particular situation. That concerned a district court's ability to sentence in disagreement with guideline policy. Kimbrough dealt with specific statutory penalties. The fast track concerns a district court's ability to sentence in disagreement with congressional policy. It does not impose a mandatory sentencing scheme. It effectively amends the sentencing guidelines to allow for the downward departure. It occurs because of charge bargaining, not sentencing bargaining. And it is not the, what we're talking about is not dealing with a national uniformity. We also believe, as we have argued, that if this court is allowed to continue on its path of imposing lower sentences simply because of the fast track policy, that that is going to undermine the program in the Southern District of California. Because if defendants are allowed to obtain the sentence without doing anything that they're supposed to do, that there will be no reason for them to go to the policy, and there's no reason for us to continue to give it to them. I'd like to reserve the rest of my time until after I hear defense arguments. You've got it. You've got about two and a half minutes left, so thank you. We'll hear from counsel for the affidavit. Good morning, Your Honor. Steve Hovechek, federal defenders. On behalf of Mr. Gonzalez-Sotelo. Your Honor, first of all, I'd like to dispute Mr. Cerno's assertion that this sentence was imposed solely to punish the government. This report undertook a significant amount of analysis in which he devoted some time to specifically analyzing Mr. Gonzalez-Sotelo's actual prior conviction in this case, drawing on his own experience as a state court prosecutor, and with no objection to either party, determined that in the universe of individuals convicted under California Penal Code 288, that this was a less aggravated offense. So that's number one. He's entitled under the statute, 3553A1, to take into account the defendant's history and characteristics. And he did, and he knocked the history down from four to three. And then he says, but it's your lucky day, the last guy here got 30 months, so even though I think you deserve 57, I'm giving you 30. Well, I think that he knocked down the criminal history category because of the fact that there were a couple of other minor offenses that had knocked it up, and he was on probation. I don't think that he double-counted the less aggravated nature of this particular offense when he made that decision. He then calculated in that situation when he was comparing him to other similarly situated individuals, including the guy with the two robberies. And I direct the court to- Is it your position that Kimbrough allows him to do that? Oh, absolutely, Your Honor. So absolutely. Kimbrough relied in great part on sentencing commission findings that the distinction between crack and powder cocaine that was originally thought to be the basis for the 100 to 1 ratio had not been borne out. There's no similar comparison between the seriousness of armed robbery and a 288C conviction for sexual mishandling, or whatever, I don't want to get into the facts of the case. So I don't see that the Kimbrough analysis is available to you. Well, I think, Your Honor, the reason- I mean, Kimbrough's cracked cocaine. Here we're talking about armed robbery to sexual badness. Do you think Kimbrough allows a court to make that kind of policy determination? Absolutely. Absolutely. And the reason I think that Kimbrough so strongly supports our position is its overall approach. It basically stands for the proposition, and the Rodriguez court says this as well, that you can't find implicit limitations on district court sentencing discretion under 3553 from congressional pronouncements. It has to be expressed. And that's what the Supreme Court said in Kimbrough was, look, Congress has never told you that you can't take this into account, so therefore you can. The same situation here, as the Rodriguez court, the First Circuit pointed out, there's no expressed language in the PROTECT Act saying you can or you can't consider any particular fact. So the district court here is entitled to consider that. And I really think that when you talk about comparing defendants' prior convictions, that's a core sentencing function of the district court. The district court looks at the record and decides, you know, based upon what this person has done in the past, how that should inform the sentence in this particular case. And comparing a 288 to a 211 under the California Penal Code is squarely within traditional district court discretion. So I think that it was well within its rights in doing that. I'd also point out that this case is actually different from the typical cases like Marcial and Benuelos, where you're talking about inter-district disparities. The theory under those old cases, pre-Kimbrough cases, was that Congress must have known there would be geographical disparity, and so therefore they have implicitly taken that into account. I think that analysis is no good anymore after Kimbrough. But this isn't inter-district disparity. This is intra-district disparity. And there's no way you can infer from setting up the fast-track program that Congress knew in advance that an unaggravated 288 would be treated vastly differently than a person with two 211s. They couldn't have known that. So you can't find the implicit approval of this type of distinction in advance on the part of Congress, because they simply just didn't consider that. Excuse me. Go ahead and finish your sentence. No, that's okay, Your Honor. What do you think of Mr. Kernow's argument that if you write, you're going to put fast-track out of business, nobody's going to take a fast-track plea because you may as well go to trial and lose and get the fast-track deal? I'm glad you asked that, Your Honor, because his arguments about the implications for the fast-track are entirely off-base. We've got to remember who we're talking about here. We're talking about an individual, Mr. Gonzales-Sotelo. He didn't get any offer. So he didn't turn down anything from the government. And an individual who's not similarly situated to Gonzales-Sotelo in that he does get an offer, he's not going to say, well, I can take the risk of turning down the offer because Gonzales-Sotelo got 30 months. I'm not going to plead guilty to a cap of 30 months, an absolute statutory cap of 30 months. I'm going to turn that down, and I'm going to take the risk at a 20-year felony because there's some chance that a district court might exercise his discretion in my favor. I don't think that's a realistic possibility at all. I certainly would never advise a client to roll the dice that way. Any rational lawyer and any rational defendant is going to say, I want that cap. I don't care that a district court has discretion. Because even the Rodriguez case, which we rely upon heavily, the very last paragraph of the opinion, I think it's at page 231, says, hey, district courts have no obligation to impose sentences that are consistent with other fast-track sentences. It's a discretionary call. And this district court made that discretionary call based upon his analysis, unobjected to, of the significance of this particular 288. He concluded his analysis by doing a parsimony analysis, a 3553 at 17 of the record. And he concluded his analysis and decided in this particular case, this particular guy with this particular record, that I'm going to give him the 30-month sentence so that there's no general policy that a criminal defendant can rely upon. I guess particularly one in front of Judge Burns to say, oh, I'm going to tear down the fast track because I might get lucky later on. That's totally unrealistic. I'd also like to point out that he didn't exactly get the fast-track sentence because the fast-track sentence is also one year of supervised release. This individual got three years of supervised release. So basically, if he happens to return and Judge Burns told him, I believe it was at Exeter the record 18, I'll throw the book at you next time. That's a quote. Quote, I'll throw the book at you next time. So he actually has more supervised release than a fast-track defendant, more exposure. He can do another two years in prison, which when you add that to the 30 months, is starting to get closer to what the guideline sentence might have been. So it really isn't exactly the same situation. Mr. Curnow said that these individuals are convicted of different offenses. The disparity provision itself, 3553A6, talks about individuals with similar backgrounds and similar conduct. It's not offenses, it's conduct, and there really isn't an argument that the individual in this case, Mr. Gonzales-Sotelo, is that his conduct is any different from anybody else who's convicted of 1326. In fact, from the facts, this is just another guy caught coming into the United States, not doing anything particular other than his illegal entry at the time. So there's nothing about his conduct that in any way differentiates him from anyone else. Does that have to do only with the conduct charged in the indictment, or was this conduct under the 288A or 288C? Well, that's a good point, Your Honor. I didn't think of it that way. I was thinking in terms of the offense conduct. But I still think that it also talks about people with similar criminal histories. And so I think Judge Burns, in a poor sentencing function, is perfectly entitled to evaluate individuals' prior convictions. Do we have any cases which have so held? No. No, this is an open question. Which, for another thing, is a reason why I don't think that the government can prevail on plain error analysis here. There was no objection below. They never said the things that Mr. Curnow is saying now, that the idea that you consider the disparities created intra-district by a fast-track program are off-limits for district court judges. They never made that argument below. And this Court has held, I think actually Your Honor was the author of that opinion, Miranda Lopez, that when there's a circuit split, and there is here, we've got Rodriguez on the one side and Judge Barquette's dissenting opinion in the Vega-Castillo case on that side. And then you've got the Gomez-Herrera case on the other side. So we have a circuit split here. It's an open question. So they cannot prevail on a plain error analysis. And finally, with respect to the argument that I'm sorry, I've lost my train of thought. Oh, that's all right. One of the problems, I think, with the Gomez-Herrera case is that it does not confront the express versus implicit limitations analysis that the Kimbrough Court relied upon. In fact, the Rodriguez Court points that out. They say, look, there is no analysis in Gomez-Herrera. And they say, in fact, and this is at page 229 to 230, that the Gomez-Herrera result can only be reached, quote, by heavy reliance on inference and implication about congressional intent, a practice that runs directly contrary to the Kimbrough Court's newly glossed approach. So Gomez-Herrera doesn't address this notion that you can only find expressed limitations on sentencing discretion. But I thought Mr. Kernow was saying, if I understood him correctly, Kimbrough allows district court discretion in disagreeing with guidelines, but not congressional policy. I think that that's a fair reading of it. But we don't have a congressional policy here. There's no congressional policy. So leave it to the U.S. attorney to decide which crimes, which prior crimes can be predicates for fast track and which cannot. That's correct. And that's what happened here. But the district court has sentencing discretion. The government has charging discretion. They don't have to give Mr. Gonzales-Sotelo an offer. They don't have to charge him with the two 1325s that other individuals are charged with. But then the district court comes along, and then it exercises its sentencing discretion. And as Rodriguez pointed out, there is nothing in the PROTECT Act that tells district courts how to exercise their sentencing discretion. This district court is entitled to say, look, you know, government, you can make whatever offer you want. You can make whatever recommendation you want. And then, you know, when push comes to shove, I'm the one making the sentencing call. And I have decided that based on 3553A6, there's an unwarranted disparity here. And in addition, as Rodriguez points out, it's not just 3553A6. It's the whole constellation of 3553A factors. And, you know, we have explicit discussion here of history and characteristics. We also have an explicit invocation of the parsimony principle. That's a core judicial function. That doesn't in any way implicate separation of powers. That's what that judge is entitled to do. So I'd ask that unless Your Honor has any other questions, I'll submit. Thank you very much. Mr. Curnow, back to you. You've got two and a half minutes. Thank you. I think what we need to do is refocus on what really happened here. What really happened here was that this sentence was imposed because of the court's disagreement with the U.S. Attorney's fast-track policy. That's the bottom line. The fact that the parsimony principle was stated once during the discussion doesn't in any way indicate that the court was going through the routine that one is supposed to go through in pronouncing a sentence. Also, the disparity under 3553-6, A-6, was never mentioned. Disparity is never mentioned. Consistency is the only word that's used. And again, that was only because the court wanted to have consistency between other immigration defense defendants and this defendant. He thought this defendant should get 57 months. He thought the other defendant should have gotten 57 months. But because of the fast-track policy, both of them were going to get 30 months. And that is exactly where we land in this case. And all of the argument by defense counsel about the grand things the court did just don't pan out when you read the record. And on that, I'll submit. Thank you very much to both counsels. Very well-argued case is submitted at this time. Good morning. Thank you. Good morning. We'll stand and recess for the session. All rise for session recess.
judges: Silverman, Bea, Conlon